I am Attorney General for Respondents in this matter. I will raise a perplexing issue if you may ask for a rebuttal. The District Court erred in this case in two respects. First it erred in misconstruing the Arizona Supreme Court opinion in this matter in finding the instructions were erroneous. And then secondly, it erred in refusing to apply a harmless error analysis on the draft. And the second error flowed from the first error. What is evident from the briefs in this case, there is a fundamental misunderstanding of what the Arizona Supreme Court held when the District Court certified the case back to the Supreme Court for a determination of the law. Counsel, let me ask you this. As I understand what the Arizona Supreme Court said, it was that there cannot be a conspiracy to commit felony murder, but there can be a conspiracy to commit murder if you prove that the person actually intended a death. That's my understanding of it. Let's partially correct you. What did I get wrong? There can indeed under Arizona law be a conspiracy to commit felony murder as long as a company that is an intent to kill, such as what we have here. Well, Counsel, I don't think the question, as I see it, is whether there is sufficient evidence from which a jury could have concluded that the defendant intended to kill, but rather the question was whether there was an instruction that required the jury to find that or not. Under the law, as the jury was instructed, the underlying felony for the felony murder charge was burglary, which under the facts of this case, the burglary was entering with an intent to kill the victim. So even if the jury somehow decided that the conspiracy did not rest on an intent to kill murder, but a felony murder, the jurors necessarily would have found the requisite intent to kill, which really is all that the Arizona Supreme Court held in advance. My second answer. Where is that? What is it in the instructions that told the jury they had to find intent to kill for conspiracy? The conspiracy instructions require an intent to promote or aid the object of the conspiracy. And the evidence in this case is that the object of the conspiracy of all of the co-defendants was to kill the victim. The second answer to Judge Draper's question is that the way that the case was argued to the jurors on the conspiracy charge was that there was overwhelming evidence of an intent to kill. If you review the answer in brief, they focus on a lot of the language that the prosecutor used in relation to felony murder. But if you look at the prosecutor's closing argument, he only spoke about felony murder when he was discussing the felony murder charge. What do you make about the jury's verdict, which acquitted the defendant of first-degree murder and then found him guilty of murder on the felony murder but not premeditation aspect? The law in Arizona, as is in Michigan, is that there can be inconsistent verdicts. What we have here in this case is a particularly unsympathetic victim. So there's really no accounting for why the jurors ruled the way that they did. Doesn't that make it even more harmful that the jury wasn't instructed, even under the conspiracy instruction, that the defendant must have had the intent to kill? The conspiracy instruction requires the jury to find an intent to promote or aid the object of the conspiracy. The only evidence in this case is that the object of that conspiracy was to kill. I guess my difficulty is, as I said earlier, I don't question that there was enough evidence and I don't question that the prosecutor's argument was completely proper. But I don't see how evidence and argument can make up for the absence of an instruction that sets out all the required elements of the crime. And I guess I don't see an instruction that points the jury specifically to the need to find an intent to kill as the object of the conspiracy. The instruction on conspiracy is a general instruction on the elements of conspiracy under the law in Arizona. One of the necessary elements for a finding of guilt on conspiracy is an intent to promote or aid the object of the conspiracy. Well, intended to promote or assist the commission of such conduct. Our problem is such conduct is unspecific. And there's also an instruction with regard to felony murder as a form of first-degree murder. So can we be sure the jury didn't decide that the conduct was burglary without intent to kill, but because felony murder elements exist, then there's enough to find conspiracy or agreement to commit the crime that resulted in felony murder? Under Arizona law, Your Honor, you should look to the arguments of counsel in helping to determine what the instructions mean. And it is clear from the prosecutor's closing argument in this case that as far as the conspiracy goes, the only thing that he discussed, the only thing that he argued to the jurors, was that there wasn't an intent to killing, that the object of the conspiracy is to kill the victim. When you ---- I understand that the law permits inconsistent verdicts. But isn't it at least somewhat troubling that Mr. Ivanchik was not convicted of first-degree murder itself? Doesn't that suggest that the jury did not ---- was not convinced that he had the requisite intent? Well, the only thing that a finding of not guilty on first-degree murder shows, Your Honor, is a lack of premeditation. All that is required for conspiracy is an intent to carry out the conspiracy. And what the evidence overwhelmingly shows here is an intent to kill. And I have not ---- you know, I have not discussed the facts of the case. And when I do so, I'm not merely arguing that there was ample evidence for the jury to make its finding under Frickland and Sunika. The question is whether there is a possibility that the jury found the defendant guilty on an improper theory. And when you look at the evidence in this case, coupled with the arguments of counsel, there is no reasonable possibility that the jury could have found the defendant guilty of conspiracy to commit murder under a felony murder theory. The district court found that ---- found on the ineffectiveness claim that counsel should have objected. But the reason counsel did not object is because there was never any question that the prosecutor was arguing for conspiracy to commit first-degree murder under a felony murder theory. And because under Arizona law, you can ---- a defendant can be found guilty of conspiracy to commit first-degree murder under a felony murder theory as long as there is a finding of intent to kill, there is no ---- there is no possibility that the jury found the defendant guilty on an improper theory. And in that case, the district court should have applied the connoisseur standard under BRAC. Before I conclude my primary argument, I wanted to anticipate one point I'm sure that counsel will bring up. And that is that the prosecutor in closing argument argued that a possible felony for the finding of burglary or felony murder was aggravated assault. And while that is true, the only felony in which the jurors were instructed was burglary and the murder, the intent to kill. So there is, you know, there is no ---- there is no possibility that even if the jurors in the unlikely event found conspiracy to commit felony murder, that there would not be ---- there would not be a committant intent to kill. Thank you. Thank you, counsel. We'll hear now from Mr. Metcalf. And I should add, Mr. Howe, that we did receive your notice of supplemental authority. Thank you, Your Honor. We do have one more. Do two, okay. Yeah, that's what I was just looking at. You may proceed. Thank you, Your Honor. May it please the Court. My name is Brian Metcalf. I'm an assistant Pima County public defender, and I represent the appellee in this case, Mr. Evancik. Let me start first by saying this is not a case of inconsistent verdicts. Inconsistent verdicts is a situation where the jury reaches inconsistent verdicts, which can be argued calls into question the validity or the reliability of the verdict. I'm not arguing that. Mr. Evancik has never argued that. The issue here is that the jury was instructed on a theory of prosecution that does not legally exist, that theory being conspiracy to commit felony murder. The record is replete, and I tried to put as much as I could in the answering brief of the instructions by the court and the argument by the prosecutor in this case to show that, in fact, the jury was instructed in such a way, and the prosecutor argued in such a way, that the jury was allowed, if not encouraged, to convict conspiracy to commit first-degree murder based solely on felony murder. The court's instruction, and I'm not going to read the whole thing from my brief, but the conspiracy instruction did not identify an intent to kill. It did not identify solely premeditated murder. It simply told the jury that conspiracy requires an intent and an agreement to, quotation marks, engage in the conduct constituting the offense. The offense is first-degree murder. The jury was instructed how to commit first-degree murder one of two ways, either through premeditated murder, which obviously involves an intent to kill, or through felony murder, which is committing an underlying felony, which results in a death. Contrary to opposing counsel's view of the record, I believe the record is absolutely clear that the underlying felony in this case was burglary, that the burglary was absolutely based and limited to an assault. That's what constituted the burglary, and that was the basis of felony murder. The prosecutor repeatedly argued to the jury that these defendants are guilty of first-degree murder, even if they didn't intend to kill, quotation marks. It doesn't matter that they didn't intend to kill, quotation marks. Even if they went in there and Dean Harris has been killed accidentally, it wouldn't matter. And the prosecutor went on to describe the underlying felony was an intent to commit burglary, and, quotation marks, if you go into an apartment, quotation marks, if you assault somebody with a dangerous instrument, you've committed burglary. The prosecutor's whole argument was that all of these people were guilty not only of the substantive offense of first-degree murder, whether they intended to kill or not, but they were also guilty of engaging in conduct constituting the offense of first-degree murder, either through felony murder or premeditated murder. And I would point to this. Let's assume for a moment that the jury were properly instructed. For example, on remand, would it be possible for a jury to find that this defendant or any defendant was guilty of a conspiracy to commit an intentional murder, but not guilty of first-degree murder, guilty only of second-degree murder? Absolutely. Give me an example. Somebody chickens out, they conspire, then they get nervous later, or what would be an example? The basic idea of conspiracy is that it's a crime that is completed before the objective of the conspiracy is completed. You can conspire to kill somebody and then never kill them and never do anything more than form that agreement. You've committed the crime of conspiracy to commit murder. Okay. But now fold in second-degree murder, which was also what was found with respect to him. Right. The instructions in this case, Arizona law, second-degree murder can be committed in one of three ways. One is by intentional conduct that causes death, by knowing conduct that causes death, or by reckless conduct, showing extreme indifference to human life. Any three of those is sufficient for finding a second-degree murder. We don't know which of those theories the jury relied on in this case to find Mr. Evanschick guilty of second-degree murder, but probably it was reckless indifference given the fact that they acquitted him of premeditated murder and they acquitted all the co-defendants of that. So you don't see any theoretical impediment, if we were to agree with the district court, to his being retried for all the crimes of which he was convicted, even though the instructions would have to be different on conspiracy? He could be retried on conspiracy to commit first-degree murder. That's correct. And could he also at the same time be retried for second-degree murder? He's already been convicted of that, Your Honor. Okay. So that's not even in question. No, it's not. That's just a given. Okay. So if he were retried, it would solely be on the conspiracy charge. Exactly. The rest of it stands. Because devil jeopardy would kick in on the first-degree murder. Right. Murder. Correct. Because he has been acquitted of first-degree murder. Right. And I should point out that Mr. Vonchick has a pro per cross appeal where he is claiming that he can't be retried. Right. But that particular issue is not before the Court in this oral argument. So I think the record is absolutely clear in this case, that the jury was misled, was improperly instructed into believing they could convict on a crime that doesn't exist. I think the Arizona Supreme Court's answer to the certified questions is clear, that there's no such crime in Arizona. And I think the verdicts that were rendered in this case, even if this were harmless error, and I don't think it is, since 1931 in Stromberg v. California, the U.S. Supreme Court has said repeatedly over the course of the last 70 years that when a jury is misinstructed on, not misinstructed, but instructed on an unconstitutional theory of prosecution, and there are multiple theories that go to the jury, and we get back a general verdict where they don't identify which theory they relied on, the Court has to set aside the verdict, because it's impossible to tell whether they relied on the unconstitutional theory. Is it really an unconstitutional theory or simply an element is missing? I think it's both, Your Honor. I understand where you're coming from, and some of those other cases raise issues of affirmatively lawful or affirmatively justifiable conduct, and those aren't implicated here. The issue here is whether the intent to kill element was clearly communicated to the jury so that we can have confidence that their verdict reflects the determination there was intent to kill. Intent to kill or missing element cases are sometimes a little different. It seems pretty clear that you can have a harmless error analysis for an intent, or rather for a missing element case. I agree, Your Honor. Nieder v. U.S. is an example of that. The U.S. Supreme Court decision where the element of materiality was omitted from the instruction, and the Court said we can conduct a harmless error analysis here. And in that case, they found that the error was harmless because there was no prosecutorial argument suggesting that that element existed. And, in fact, that element was not in dispute. In this case, to the contrary, the intent of Mr. Adonchik and the co-defendants was very much in dispute, whether it was an intent to kill or some other intent. And, in fact, the prosecutor argued, in my opinion, based on the portions of the record I've cited, argued extensively that intent to kill was not required for conviction of conspiracy to commit first-degree murder. So I agree. Looking at it as an omitted element is one way to look at this case. The second way to look at it, however, I think, is an instruction on a crime that doesn't exist. This Court's decision in Suniga v. Bunnell was a situation where the jury was instructed on a felony murder theory that was nonexistent, was based on aggravated assault with a deadly weapon. The Court said that can't be the basis of a felony murder. The jury had received that instruction. General verdict, no way to know if the jury relied on it. And the Ninth Circuit said we have to vacate the conviction because we don't know. So I think that there's two different ways to go in this case. Either way gets you to the same result. We're under the AEDPA here, which sets a high standard for or gives a lot of deference to the prior determinations. What in particular would you point to, or is there a particular Supreme Court president you identify that we're in conflict with here? I would point to the same U.S. Supreme Court president the Suniga Court pointed to back in 1993, which is Shad v. Arizona. And Shad v. Arizona, the U.S. Supreme Court said states can't convict people of generic crimes. There have to be specific elements. Those elements can't be unduly vague, and the jury has to be instructed on those elements. And that's what the Suniga Court relied on. I'd also point to Nader, N-E-D-E-R v. U.S. for the omission of an element. In that case, the U.S. Supreme Court said if you omit an element, that is clearly a violation of due process of law. Then the question becomes what happens. I think in this case it's a reversal. Whether this Court wants to decide whether Stromberg applies automatic reversal or conduct a harmless error analysis, I think the result is the same. Obviously, harmless error here given the nature of the verdicts. And if I could make one final point on that issue, a case relied on by the state, Ficklin v. Hatcher, which is another Ninth Circuit decision in this case by this Court. The Ninth Circuit specifically rejected a sufficiency of the evidence argument. It specifically said when we have a nonconstitutional theory go into the jury and we don't know whether the jury relied on it, we're not going to weigh the evidence and say, well, there's enough evidence to support the constitutionally valid conviction. They specifically said that in Ficklin v. Hatcher, and they relied on Sant v. Stevens, which is a 1983 U.S. Supreme Court decision, for that principle. So I think there's clearly established U.S. Supreme Court law in Arizona v. Shad and the whole line of due process cases beginning with Winship, N. Ray Winship, that talk about all of the elements of an offense having to be proven beyond a reasonable doubt. I have nothing further to add unless the Court has any questions. I think we are satisfied. My final comment, Your Honor, would be I heard earlier this morning an argument about the great writ of habeas corpus. I think if any case justifies it, it's this one, because I think Mr. Ivanchik has been convicted of a crime that literally does not exist. And if that's not a violation of due process of law, then I don't know what is. Thank you. Thank you, counsel. You do have some rebuttal time remaining. Thank you, Your Honor. Thank you. It's been a long morning. I'll just make two quick points. The tenor of the Court's questions in the argument of Petitioner's counsel, Eric Cancel, has been that the jury somehow was misinspected, and that is not true. The jury was properly instructed on the elements of conspiracy to commit murder. Counsel, in his closing argument, which is quoted extensively at page 8 of the answering brief, makes quite clear that all the jury was considering on the conspiracy count was whether there was an intent to kill, even if, however, this Court believes that the jurors were somehow misinstructed on the element of justice. Judge Clifton stated what we really have here is a missing element case under neither. And when you examine the evidence, which is the pounding of the headstone in front of the apartment, telling the victim's girlfriend that she buried one man, she's going to bury another, when you have the defendant saying to the police officer with the earlier altercation that you find a body out in the desert, you know where to find me. All of that evidence shows an intent to kill. So there is no question that the jurors could have found the defendant guilty under any illegal or improper theory. Thank you very much. Can I just ask one question? Absolutely. It's a very broad question, so if you're not prepared to address it, that's fine. In your briefs and in this case, we have cited this is a post-AEDPA case. Yes. But the Brecht analysis is referenced and discussed. And I guess I have a question about the continued viability of doing a Brecht harmless error analysis after AEDPA. I mean, if you apply the AEDPA standard and you find that it was unreasonable, you grant the petition. Mm-hmm. You don't then go do a Brecht harmless error analysis, do you? I mean, I understand the issue with how they're hearing about improper trafficking. All right. That's fine. It's just something that I've been wondering about in a couple cases we've had, because in post-AEDPA cases now I'm seeing Brecht being cited, and now I'm getting confused. So thank you. Thank you very much. Thank you, counsel. And we appreciate your arguments. The case is submitted, and we will stand adjourned for this morning's session.
judges: Graber, Wardlaw, Clifton